Roy MUNDRY and Charlotte Mundry,
Plaintiffs,

v.

GREAT AMERICAN INSURANCE COM-
PANY, Defendant.

Civ. No. 10242.

United States District Court
D. Connecticut.

Jan. 6, 1966.

Helen F. Krause, Trumbull, Conn., I. Russell Stein, New York City, for plaintiffs.

Herbert L. Cohen, Cohen & Wolf, Bridgeport, Conn., Harold H. Wolgel, Gottesman, Wolgel & Smith, New York City, for defendant.

ZAMPANO, District Judge.

The plaintiffs instituted this diversity action to enforce a judgment of $10,242.-00 they obtained in the State of New York against Michael and Anna Istvan, the defendant's insureds. Although the defendant insurer contested the negligence case to a verdict in New York, it claims exemption from paying the judgment on the ground the insureds breached the cooperation clause of the automobile liability policy issued to them by the defendant.

The instant case was scheduled for trial before this Court and a jury on November 2, 1965. As the issues were framed by the pleadings, there were essentially two questions to be determined by the jury, 1) did the insureds fail to cooperate with their insurer, and 2) if so, is the defendant insurer barred from asserting this defense on the grounds of waiver and estoppel.

When the case was called for trial, counsel for both parties informed the Court that in order to save time and expense the issues of waiver and estoppel would be withdrawn from the jury and submitted to the Court for decision. The parties further agreed that, solely for the purposes of the court trial, the insureds had breached the cooperation clause of the policy. If the Court held, assuming noncooperation, that the insurer had waived or was estopped from asserting the defense, the case would be concluded, except, of course, for the right to appeal the Court's decision. On the other hand, if the Court ruled there was no waiver or estoppel, the issue only concerning the cooperation of the Istvans would be presented for trial at the next jury term of court.

Upon the Court's consent to this procedure, the parties stipulated to certain facts, submitted certain exhibits, and filed briefs and reply briefs.

## FINDINGS OF FACT

1. The plaintiffs are citizens of the State of Connecticut and the defendant is a corporation organized under the laws of the State of New York. (Admitted in pleadings.)

2. On and before August 3, 1958, the defendant was engaged in the business of insuring persons against liability imposed upon them by law because of bodily injury sustained by any person, caused by accident and arising out of the use of automobiles. (Ex. A.)

3. Prior to August 3, 1958, the defendant issued an automobile liability policy of insurance, #VC1 48727–VF1 39630, to Michael Istvan, a resident of the State of Connecticut, which policy was in full force and effect on August 3, 1958. (Tr. p. 9.)

4. The policy covered a certain motor vehicle owned by the named insured, Conn. HZ278–1958. (Tr. p. 9.)

5. Anna Istvan was an additional insured under the policy. (Tr. p. 10.)

6. The policy contained the following condition applicable to liability coverage:

"5. Assistance and Cooperation of the Insured. (Parts 1 and 111). The insured shall cooperate with the company and, upon the company's request, attend hearings and trials and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. * * *" (Ex. A.)

7. On August 3, 1958, the plaintiff, Charlotte Mundry, was a passenger in Michael Istvan's automobile, then being driven by his wife, Anna, and was injured in an accident arising out of the operation of the automobile. (Tr. p. 11.)

8. Plaintiffs instituted a negligence suit against the Istvans in the Supreme Court, County of Bronx, State of New York. Counsel for the defendant filed an appearance for the Istvans to represent and defend them in the action. (Tr. p. 11.)

9. The insureds, Michael Istvan and Anna Istvan, breached their obligations under the cooperation clause of the policy. (Tr. p. 9.)

10. On April 22, 1963, representatives of the defendant wrote a letter to the Istvans informing them their case was scheduled for trial in May, 1963, their appearance and cooperation under the policy were necessary and "If this cooperation is lacking we would have no other alternative but to disclaim and the responsibility to defend this action would then be yours." (Ex. C.)

11. On May 7, 1963, the defendant sent a letter to the Istvans which stated the defendant had "just received word from our representative, Ronald H. Ford of Bridgeport, Connecticut, of his conversation with you on May 1, 1963, wherein you advised him that you had no intention of cooperating with the Great American Insurance Company or appearing at this trial in your own defense." The letter further notified the Istvans that, if their lack of cooperation continued, "this company will disclaim and refuse to satisfy any judgment which may be rendered as a result of this litigation." (Ex. C–1.)

12. On September 6, 1963, Mrs. Istvan was notified by the defendant that the case was scheduled for trial on September 13, 1963, and that "we cannot properly defend you without your cooperation." (Ex. C–2.)

13. On September 26, 1963, the defendant sent a telegram to the Istvans instructing them to be present in court on September 27, 1963, for the trial of the case.

14. On October 8, 1963, the defendant wrote the Istvans informing them that the case was set down for trial for October 25, 1963. The letter acknowledged that "on previous occasions, you have advised our representative that you have no intention of cooperating * * * or appearing at the trial of this action," and went on to state, "we must advise you once again that if you fail to cooperate, in accordance with the terms of your policy, and more particularly if you fail to appear at the trial of this action, this company will immediately disclaim, withdraw from the further defense of the action, and refuse to satisfy any judgment which may be rendered. * * *" (Ex. C–3.)

15. On October 14, 1963, counsel for the defendant wrote letters to the Istvans, advising them that he had been informed of their intention not to cooperate and, if that were so, there would be a disclaimer, any judgment would not be paid by the company, and that he would "immediately withdraw as trial counsel and take no further part in the defense of this action." Counsel further requested them to telephone his secretary "to confirm your attendance at the trial at the time and place above stated." (Ex. C–5; Ex. C–7.)

16. On October 28, 1963, the defendant notified Mr. Istvan that he and his wife must appear for the trial scheduled on November 1, 1963. (Ex. C–8.)

17. On November 1, 1963, the defendant sent a telegram to the Istvans informing them they "must be present" for the trial.

18. At no time did the Istvans appear on any of the days set for conferences or trial or calendar appearances. (Ex. D., p. 11.)

19. At no time did either of the Istvans communicate with counsel for the defendant, either in writing or by telephone. (Ex. D., pp. 12–13.)

20. The negligence trial commenced on November 4, 1963, and continued through November 6, 7, and 8, 1963. (Tr. p. 11.)

21. At no time did either of the Istvans appear during the trial. (Tr. p. 14.)

22. On the third day of the trial, November 7, 1963, the plaintiffs rested their case. Counsel for the defendant then informed the court of the many attempts to obtain the cooperation of the Istvans and stated:

"In view of the fact that neither Mr. nor Mrs. Istvan has appeared for pre-trial conferences before this trial began or have appeared at the trial here, either today or at any time since the trial has been on, the [insurance company] at this time disclaims * * * for the failure of Mr. or Mrs. Istvan to appear here and cooperate in the defense of this action. * * * (Ex. D., pp. 3–4.)

"May I just say this: Insofar as the Istvans are concerned, I am going to proceed with the case and reserve my rights, and I am not waiving my rights in any manner, shape or form, even though I am proceeding with this lawsuit at this time, since I have been retained as the attorney." (Ex. D., p. 14.)

Counsel for the plaintiffs thereupon objected and stated:

"May I say that I do not consent that he proceed with this case with any reservation of rights, that he either is representing these defendants or he is not representing these defendants, and he can't place water

on both shoulders and go ahead." (Ex. D., pp. 14–15.)

The trial court then stated he would "allow" counsel to proceed. (Ex. D., p. 15.)

23. Whereupon the trial proceeded. Counsel for the defendant called witnesses, read from pre-trial examinations and summed up to the jury. (Tr. p. 20.)

24. On November 8, 1963, the jury rendered a verdict of $7,000 for the plaintiff, Charlotte Mundry, and $3,000 for the plaintiff, Roy Mundry. (Ex. B.)

25. On November 14, 1963, a judgment was entered according to the jury verdicts, plus costs taxed at $242.00. (Ex. B.)

## CONCLUSION OF LAW

1. The Court has jurisdiction of the subject matter and of the parties. 28 U.S.C. § 1332(a);

2. The defendant waived its right to disclaim liability on the ground its insureds failed to cooperate.

3. The defendant is estopped from asserting the defense of noncooperation in this action.

4. Judgment is entered for the plaintiffs, with costs as shall be determined by the Clerk of this Court.

## DISCUSSION

For the purposes of the trial to the Court on the question of waiver and estoppel, the parties stipulated the insureds had breached the cooperation clause of their liability policy with the defendant. This stipulation implies the breach was material and, except for the doctrines of waiver and estoppel, the defendant insurer could rely on it as a defense to the judgment obtained by the plaintiffs against the insureds. The only issue before the Court is whether the defendant insurer has waived or is estopped from asserting the breach of the cooperation clause as a defense in this action.

[1] The overwhelming majority of the leading cases hold that waiver will be implied if the insurer defends the insured at the original trial with knowledge of his noncooperation.[1] Furthermore, it may be estopped in a subsequent suit on the policy from raising noncooperation as a defense. The law in both New York and Connecticut is consistent with these general rules. See, for example, Miller v. Union Indem. Co., 209 App. Div. 455, 204 N.Y.S. 730 (1924); Farrell v. Merchants Mut. Auto. Liab. Ins. Co., 203 App.Div. 118, 196 N.Y.S. 383 (1922); Goergen v. Manufacturers Casualty Ins. Co., 117 Conn. 89, 166 A. 757 (1933).

These relevant authorities indicate that an insurer will be held to have waived, and will be estopped from asserting, a breach of cooperation by its insured unless it repudiates liability immediately after becoming aware of the breach.

In their briefs, both parties recognize the controlling force of these legal principles. The plaintiffs claim the facts clearly establish the insurer's knowledge of the insureds' failure to cooperate long before trial. They, therefore, assert there has been a waiver and an estoppel. The defendant opposes this position contending:

"When the trial began on November 4, 1963, the insured had in no way breached their contract with the Defendant, and the Defendant's attorneys, having no reason to disclaim at that point, appeared in their behalf, fully prepared to defend the action. At the close of the Plaintiffs' case, however, when it became clear that the Defendant's insured would not attend, a breach of the insured's contract with the Defendant occurred. That was, therefore, the earliest possible point in time when the Defendant could have attempted to disclaim liability and have been justified in so doing. In

1. The cases are collected in 70 A.L.R.2d 1198. See also Vance, Insurance 497 et seq. (3rd ed. 1951).

this respect the instant case differs from those cases where, due to the insured's failure to cooperate, or for some other reason, a breach of the insurance contract is definitely established at some time prior to the actual trial of the case." (Defendant's Memorandum of Law, p. 2.)

■ On the basis of the facts submitted by stipulation and determined from the exhibits the one certainty that appears is the insureds' intention not to cooperate and their actual noncooperation long before the trial. The failure of the insureds to attend the trial should have been no surprise; it was by then a foregone conclusion. For over eight months prior to the trial the insureds not only failed to appear despite repeated requests by letters and telegrams at scheduled conferences, hearings and trial dates, but expressly informed the defendant they had no intention of cooperating, either before or at trial. Under these circumstances, the defendant had the right and the correlative duty to withdraw prior to trial in order to preserve its defense of noncooperation. Murphy v. Solomon, 22 Misc.2d 857, 196 N.Y.S. 2d 359 (1959); cf. Re Spellman, 4 A.D. 2d 215, 164 N.Y.S.2d 182 (1957); Re Dunn, 205 N.Y. 398, 98 N.E. 914 (1925); 3 N.Y.Jur., Attorney and Client, § 10. Its failure to do so waived the defense to which it would otherwise have been entitled. Shalita v. American Motorists Casualty Company, 266 App.Div. 131, 41 N.Y.S.2d 507 (1943); Farrell v. Merchants Mut. Auto. Liab. Ins. Co., supra; Miller v. Union Indem. Co., supra; Bronkie v. Lumbermen's Mutual Casualty Co., 3 Conn.Supp. 364 (1936).

The defendant's disclaimer after the plaintiffs rested their case was, therefore, ineffective and untimely. Even assuming knowledge of the breach first came at trial, the defendant at that point should have withdrawn from the further defense of the case and preserved its elec-

tion. Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 160 N.E. 367, 72 A.L.R. 1443 (1927); Weatherwax v. Royal Indemnity Co., 250 N.Y. 281, 295, 165 N.E. 293 (1929); Miller v. Union Indemnity Co., supra. The defendant's claim that "it is certainly doubtful that the Court would have permitted Defendant's attorneys to withdraw" is a baseless assumption. The trial court "allowed" defendant's counsel to continue to defend upon his own request. He thus proceeded not by compulsion but by choice.[2] Had he asked to withdraw, the court certainly would have granted permission. See Mionis v. Merchants Mut. Cas. Co., 9 Misc.2d 357, 172 N.Y.S.2d 727 (1957); Weatherwax v. Royal Indemnity Co., supra; Murphy v. Solomon, supra; Re Spellman, supra; Re Dunn, supra; 3 N.Y.Jur., Attorney and Client, §§ 9, 10; cf. Pennsylvania Casualty Co. v. Miller, 145 F.2d 292, 293 (7 Cir. 1944).

■ It may be true, as defendant contends, that waiver against an insurer is prevented if it assumes the defense of a negligence action with a reservation of rights. 74 Appleman, Insurance Law and Practice, § 4694. But the defendant here did not elect to follow this procedure. Prior to trial the defendant informed their assureds it intended to withdraw from the case and not defend at all. Only during the trial did it state to the court and plaintiffs' counsel it would continue to defend with a reservation of rights; but it did not promptly notify the insureds of its decision. Under the circumstances, defendant's reliance on the "reservation of rights" doctrine is misplaced. Goergen v. Manufacturers Casualty Ins. Co., supra, 117 Conn. at 94–95, 166 A. 757; Basta v. United States Fidelity and Guaranty Company, 107 Conn. 446, 450, 140 A. 816 (1928); Mason-Henry Press v. Aetna Life Ins. Co., 211 N.Y. 489, 105 N.E. 826 (1914); Gerka v. Fidelity & Casualty Co., 251 N.Y. 51, 167 N.E. 169 (1929).

---

**2.** Compare McDaniels v. General Ins. Co., 1 Cal.App.2d 454, 36 P.2d 829 (1934), relied on heavily by the defendant in which the court indicated under California law the insurer could not have withdrawn had it wished to do so.

The conduct of the insurer, by beginning and continuing the litigation with knowledge of the breach of cooperation which it now attempts to assert, constitutes an irrevocable waiver of the right to forfeit the indemnity contract on that ground.

Moreover, turning our attention to the effect of the defendant's conduct on the injured plaintiffs here, Shelby Mutual Casualty Co. v. Richmond, 185 F.2d 803, 807 (2 Cir. 1950), the grounds supporting estoppel are equally compelling. Despite its knowledge of noncooperation prior to trial the defendant did not inform the plaintiffs of its disclaimer until after they had submitted their case to the jury.

Many influences affect the course of a negligence case from injury to recovery. Not the least significant of these is the factor of insurance coverage. Had prompt notice of disclaimer been given here prior to trial, the plaintiffs may well have chosen another course of action. In lieu of a trial they might have attempted to negotiate a settlement at a reduced value directly with the Istvans. Weighing the costs of litigation against the slim chance of ultimate recovery from execution-proof defendants, they may have abandoned their action at law altogether. When the plaintiffs embarked on the trial of this case, they had every reason to expect that their success would be satisfied within the policy limits by the insurer. They were given no cause to chart another course. The disclaimer by the insurer after the plaintiff had rested came too late. The damage had been done. The choice of trial strategy—including the right to withdraw rather than wasting time and expense to obtain a possibly worthless verdict—belonged to the injured parties. It was incumbent upon the insurer not to frustrate this choice by withholding its disclaimer. Good faith required nothing less.

The insurer, therefore, is estopped from asserting the Istvans' noncooperation as a defense to this action.